## SYRACUSE ENGINEERING CO., Inc., et al. v. HAIGHT.

### No. 320.

Circuit Court of Appeals, Second Circuit.
June 13, 1938.

---

Laurence Sovik, of Syracuse, N. Y., for appellant.

Lionel O. Grossman and Stewart F. Hancock, both of Syracuse, N. Y. (Morris Berman, of Syracuse, N. Y., of counsel), for appellees.

Costello, Cooney & Fearon, of Syracuse, N. Y., for Keith F. Driscoll.

Albert J. Oot, of Syracuse, N. Y., for trustee as amicus curiæ.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy adjudging one, Brown, a bankrupt; the appellant is not Brown himself, but Haight, the receiver of the Salt Springs National Bank, who attached all Brown's property on April 9, 1936, and got judgment on May 20th. The act of bankruptcy alleged was Brown's suffering this attachment while insolvent, and failing to discharge it within thirty days thereafter. Section 3a (4) of the Bankruptcy Act, 11 U.S.C.A. § 21(a) (4). Three creditors filed the petition on May 22, 1936; Brown answered, and Haight intervened pro interesse suo and also answered (there has been some question whether Brown did not withdraw his answer, but that is irrelevant). Two issues alone are involved: whether the three petitioners were creditors, and whether Brown was insolvent on April 9, 1936. The record is very confusing. The judge wrote no opinion and made no findings—supposing that the parties would not appeal—and the statement of evidence was very irregularly "approved". However, we have concluded that he really meant to "approve it" under Equity Rule 75(b), 28 U.S.C.A. following section 723; having jurisdiction in any event, we can proceed. Nevertheless Haight will not recover his

disbursements for printing that part of the record which was not necessary to the determination of the relevant issues.

■ There was no proof that any of the petitioners were creditors. As to the first one—Syracuse Engineering Company which alleged that it was a creditor for labor and materials in the sum of $2,478.-95—the only pretence of evidence is an entry in Exhibit I of a joint claim of C. F. Stanton Engineering Co. and G. Norman Knaus for labor and materials in the sum of $3,122.84. Exhibit I was a sworn statement of Brown's assets and liabilities, prepared in his lawyers' office on February 7, 1936 as of February 1; its purpose and use are not disclosed, and it was plain hearsay and therefore incompetent against Haight, whose interest was not the same as Brown's. The attempted defence of its introduction is that it was a declaration against Brown's interest, but Brown was alive, and death, or at least inaccessibility, is a condition upon this exception to the hearsay rule, Wigmore, § 1456. Nevertheless, Haight did not challenge it as hearsay, when it was offered; he said that there had been "no proper foundation laid"—whatever that might mean—that it did "not purport to show the values of certain properties", and that it spoke from February 1st instead of from April 9th. These objections were meaningless, so far as we can see, and the judge was right to admit it. But when admitted, it did not prove that the Syracuse Company was a creditor; the only apparent connection between that company and the C. F. Stanton Engineering Company and G. Norman Knaus was that Knaus verified the petition for adjudication as to the petitioner's president. The names and amounts were substantially different; and Knaus may well have shared a claim personally with the Stanton Company, in which the Syracuse Company had no interest whatever. The next petitioner, I. Fleischman & Sons, alleged that it was a creditor for merchandise in the sum of $12,242.22. Exhibit I contained an entry of a debt to "Jacob Fleischman for merchandise, $16,272.92", and although the amounts were far apart, the names were closely alike. Perhaps because of the following testimony of Brown we should hold that Fleischman was a creditor, but the amount remains wholly uncertain. Brown swore: "I owe Fleischman a small bill * * * I couldn't state the amount * * * I couldn't state without having the bills on it". Twelve or sixteen thousand dollars is scarcely a "small bill". The last petitioner, Larned, alleged that he was a creditor for medical services in the sum of $98. His name does not appear in Exhibit I, and the record is wholly barren of evidence about him, except that Haight's lawyer at one of the hearings said: "there should not be very much doubt that the Larned claim would be admitted because your Honor recalls the Larned claim in the first proceeding". We have said several times that we will not search through the colloquy of counsel, especially in insolvency proceedings, to extract admissions out of casual remarks. In re Syracuse Stutz Co., Inc., 2 Cir., 55 F.2d 914, 917; In re National Public Service Corp., 2 Cir., 68 F.2d 859, 861; In re Adolf Gobel, Inc., 2 Cir., 80 F.2d 849, 853. We also disregard Brown's admission in his answer that the petitioners were his creditors for over $500, and that Larned in particular was a creditor for $98. Like Exhibit I these declarations were hearsay; and, however relevant the answer itself might be as an act of Brown, its contents was not competent against Haight. Central State Bank v. Harrington, 6 Cir., 4 F.2d 514. The adjudication must be reversed for these reasons, and as the cause will probably be retried, we will lay down some rules for its guidance.

■ First: Petitioning creditors ordinarily have the burden of proof upon all the issues and throughout the hearing. The petitioners at bar do not deny this expressly, but much of their reasoning is consistent only with a contrary opinion. It is true that the act of bankruptcy is within § 3a (3), 11 U.S.C.A. § 21(a) (3), and therefore that under § 3d, 11 U.S.C.A. § 21(d), Brown would have had the burden of proving solvency, if he had failed to bring his books to the hearing and to submit to examination. Apparently he did his duty in this regard; certainly he was examined both then and under § 21a, 11 U.S.C.A. § 44(a), and some of his papers were put in evidence, as has already appeared; the petitioners do not suggest that he was within § 3d, 11 U.S.C.A. § 21(d). If he does his duty upon the next trial also, no question will arise; if he does not, the judge may have to decide whether § 3d, 11 U.S.C.A. § 21(d) applies against an objecting creditor, a question which we leave open for the present in spite of what I said in In re Perlhefter, D.C., 177 F. 299. See, also, In

576

re Cochrane Mfg. Co., D.C., 185 F. 913, 26 A.B.R. 459.

 Second: Debts and liabilities secured by pledge or mortgage are to be measured by valuing the collateral as of April 9, 1936, and subtracting it from the face of the debt with interest § 57(h) of the Bankruptcy Act, 11 U.S.C.A. § 93(h). By virtue of § 1083-a of the N.Y. Civil Practice Act, the price at which any mortgaged property is sold on foreclosure, may not be used to fix the deficiency; the property itself must be appraised as though there had been no sale. This is not true, however, if the foreclosure court had on April 9, 1936 already appraised the property and entered a deficiency judgment under § 1083-a: in that case the debt has been liquidated, and the judgment is final. Brown's endorsements and other unconditional contracts of suretyship will count as debts at their ·face, but the value of his claim over in subrogation against the principal, if any, must be appraised and counted as an asset. In Huttig Mfg. Co. v. Edwards, 8 Cir., 160 F. 619, where the alleged bankrupt was charged with the note he had endorsed, the court did not indeed mention the claim over against the maker as an asset; perhaps this was because the maker was insolvent, but in any event we do not read the decision as to the contrary of what we have laid down. There is a rather surprising dearth of authority on the point. So far as Brown was merely an indemnitor, although the result will be the same as in the case just mentioned, in form the claim itself should be reduced by any security or other recourse to which the indemnitee was obliged to resort before his claim against Brown could be fixed.

 Third: On the record as we have it, the petitioners did not prove insolvency on any theory, because of one very important omission—the value of Brown's contingent interest in his mother's estate, and of that part of his income from the trust which could be reached under § 684 and § 1189 of the Civil Practice Act, and § 98 of the Real Property Law of New York. It is difficult to form any accurate estimate of his financial condition, because the parties are not agreed upon the ownership and values of much of the property, or even as to his liabilities. The petitioners conceded that the property—outside the interests in the mother's estate—was worth $114,000. (If all their contentions are resolved in their favor, we make the figure considerably lower, but they cannot complain if arguendo we accept the total as they give it). We cannot figure the liabilities even on the showing most favorable to them, at more than $313,000. Thus the shortage was at most not over $200,000 and against it the value of the interests in the estate must be credited. Brown's share was valued at about $500,000, and on April 9, 1936, he was 49 years old; there was testimony that the present value of a vested estate of $500,000 at the end of that period was about $392,000; and the expectancy of a man of 49 that he will live ten years is about 84% by the American Mortality Tables. Thus for actuarial purposes the present value of his interest may have been about 80%, or $313,000. Whether it had a realizable value of $200,000, or what it had, the petitioners did not attempt to prove, nor can we say; but to deny it all value on the theory that it was speculative was plainly improper. Brown was in good health; a purchaser of his interest would have an insurable interest in his life for the necessary period of eleven years; and it might be an exceedingly good bargain to pay $200,000 for a possible $500,000, insuring against his death meanwhile. It would indeed take cash to do so, but there are persons on the lookout for exactly that kind of bargain. Moreover, the income of the estate was about $25,000 a year, and out of it $2500 at least was attachable under § 684 of the Civil Practice Act; and under § 1189 of the Civil Practice Act and § 98 of the Real Property Law, as much more as was not "necessary to his support". That might well run into very substantial sums. In arguing upon the basis of the petitioners' figures it will of course be understood that we do not mean to assent to their correctness.

Order reversed; new trial ordered.