Allan L. TUMARKIN, as Trustee in Bankruptcy of J. B. Baker, Inc., Plaintiff,

v.

Sam GALLAY, Defendant.

United States District Court
S. D. New York.
Dec. 28, 1954.

Edward B. Levy, New York City, for plaintiff.

Benjamin & Myer Leibowitz, New York City, for defendant.

MURPHY, District Judge.

The trustee in bankruptcy of J. B. Baker, Inc. brings this action to recover an allegedly preferential payment of $15,000 made to defendant within four months of the filing of its voluntary petition in bankruptcy on January 15, 1953. Concededly defendant, who was president, director and 50 percent shareholder of the corporation at time of payment, received the $15,000 on November 24, 1952, in repayment of a loan made to the corporation at the time of its formation in September, 1952.

In August, 1952, Jeffrey Baker had secured a contract for painting in five large apartment dwellings near Newark, New Jersey, for $345,000. He met defendant, a New York painting contractor, through a mutual friend, and the following month the corporation was formed with defendant's loan. There is some conflict concerning the reason for defendant's withdrawal. Defendant claims that Baker demanded that the corporation pay his individual debts and that there was no agreement to this effect; plaintiff insists that Baker advised defendant to get out before a bad situation worsened. In any event, defendant resigned, returned his shares and received the $15,000 on November 24, 1952.

The assets of the corporation on the date of filing, January 15, 1953, were $19,261 against liabilities of $48,189.30. According to testimony of plaintiff's accountant, the corporation on the date of repayment of the loan, less than two months earlier, had a deficit of $20,822.-82, with assets of $4,587.67 against liabilities of $25,410.49. Defendant disputes this. Accordingly, the issues of fact posed are whether the corporation was insolvent at the time of payment to defendant; and if so whether defendant at that time had reasonable cause to believe that the corporation was insolvent.

A person is deemed insolvent under the present Bankruptcy Act "whenever the aggregate of his property * * shall not at a fair valuation, be sufficient in amount to pay his debts."[1] This "balance sheet test"[2] under the present statute has replaced a standard, discarded in this country since 1898 but current elsewhere, of inability to pay debts in the ordinary course of business as they fall due.[3]

As indicated, at trial plaintiff's accountant testified that on the day of repayment, November 24, 1952, there was a deficit of $20,822.82 with assets and liabilities as follows:

"Assets

| | |
|---|---|
| Cash in Bank of Manhattan Co. | $ 55.87 |
| Loan Receivable—J. B. Baker | 2,408.65 |
| Wages Held in Escrow | 2,017.75 |
| Equipment | 105.40 |
| Total Assets | $4,587.67" |

"Liabilities

| | |
|---|---|
| Accounts payable—Per Schedule | $14,972.83 |
| Note Payable—Bank of Manhattan Co. | 5,000.00 |
| Unemployment Insurance and Old Age Taxes Payable | 1,032.56 |
| Withholding Taxes Payable | 4,405.10 |
| Total Liabilities | $25,410.49" |

Defendant disputed these amounts relying largely on a balance sheet submitted by the corporation's accountant to a bank on October 29, 1952, in connection with a loan of $5,000 made a few days later. This estimate showed a net profit of $3,563.72 with assets and liabilities as follows:

"Assets

| | | |
|---|---|---|
| Cash on Deposit | | 3,706.28 |
| Accounts Receivable | | 30,000.00 |
| Inventory—Materials & Supplies | | 8,600.00 |
| Wages Held in Escrow | 2,017.75 | |
| Less Wages Due | 1,392.30 | 625.45 |
| Equipment | | 1,190.40 |
| Loan Rec. | | 42.17 |
| Deferred Charges | | 3,197.47 |
| Total Assets | | 47,361.77" |

---

1. 11 U.S.C.A. § 1(19).

2. See Syracuse Engineering Co. v. Haight, 2 Cir., 110 F.2d 468, 471.

3. 1 Collier, Bankruptcy (14th Ed.1940) § 1, p. 68.

| "Liabilities | |
| --- | --- |
| Accounts Payable | 14,972.83 |
| Loan Payable—Bank of Manhattan Co. | 5,000.00 |
| Soc. Sec. Tax Payable | 374.63 |
| Unemployment Ins. & Dis. Ins. Ability Payable [sic] | 317.26 |
| Withholding Tax Payable | 2,891.60 |
| Accrued Expenses | 5,241.73 |
| Total Liabilities | 28,798.05 |
| Loan Payable—S. Gallay | 15,000.00 |
| Net Profit on the Period | 3,563.72 |
| Total Liabilities | 47,361.77" |

Defendant testified that $20,000 was received on December 5, 1952, for work done in November involving use of some $3,000 worth of material, and accordingly the balance of October 29 should have been even more favorable on November 24, 1952, the critical day.

In a memorandum submitted after close of trial, plaintiff revised its estimate of the balance sheet of November 24, 1952, from the original deficit of $20,822.82 downward to $3,670.11. This change was largely due to the addition of $18,000 for accounts receivable to the asset side of the ledger and a corresponding $3,058.29 for wages accrued to the liability side. This reduction in the estimated deficit by plaintiff of an amount in excess of $17,000 facilitates resolution of the alleged insolvency of the corporate debtor on the critical day. There is no dispute that the sole source of corporate income was realized from periodic payments for work completed, made a few days after the first of each month. These amounts had been $25,000 on October 6, $21,000 on November 5, $7,000 on November 24 and $20,000 on December 5. Apportioning the last amount for the period until November 24, at least $67,000 had been paid to the corporation for its work under contract since its inception. Defendant has testified, and there is no dispute, that the amounts paid represented only 90 percent of those due, the remaining 10 percent being retained in a fund by the payor general contractor and made payable to the corporate debtor only upon completion of the entire work under the contract.

■■ No doubt the corporate debtor's equity in this retention fund for work already completed had some value. We think that plaintiff's estimate of the assets of the corporation on November 24 erroneously omitted such valuation which as of that date would have become available to the corporation within a reasonable time upon completion of the entire contract. The full amount of this equity almost doubles plaintiff's own estimate of the corporation's deficit. Despite the contingency of completion of the entire contract, it cannot be said that on November 24, this equity had no value at all.[4] Plaintiff trustee has the burden of proof to show insolvency at the time of transfer.[5] To the omission from assets of the corporate equity in the retention fund of the general contractor may be added failure of plaintiff to estimate value of work in process on November 24, for which no payment at all had been made. On the issue of fact of insolvency, plaintiff has failed to sustain its burden of proof and accordingly it is unnecessary to consider whether or not defendant had reasonable cause to believe that the corporation was insolvent at the time of the transfer.

The complaint is dismissed.

Judgment accordingly.

---

4. Cf. Syracuse Engineering Co. v. Haight, 2 Cir., 97 F.2d 573, 576.

5. 3 Collier, Bankruptcy (14th Ed.1940) § 60, p. 860, n. 6.