**In the Matter of BICHEL OPTICAL LAB-ORATORIES, INC., a Minnesota corporation, Alleged Bankrupt.**

**No. 4–68–Bky 1246.**

United States District Court
D. Minnesota,
Fourth Division.

May 6, 1969.

James B. Lund, Minneapolis, Minn., James W. Fahlgren and Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for Bichel Optical Laboratories, Inc., alleged bankrupt.

Alan W. Falconer, Wagner & Johnston, Howard A. Patrick, Elliot S. Kaplan and Robins, Davis & Lyons, Minneapolis, Minn., for petitioning creditors.

## MEMORANDUM DECISION

LARSON, District Judge.

This is an action on an involuntary bankruptcy petition. On October 23,

1968, three creditors of Bichel Optical Laboratories, Inc. (Bichel) filed a petition asking this Court to adjudge Bichel a bankrupt. Since that time another creditor has been allowed to intervene. Bichel filed an answer challenging the jurisdiction of this Court, which · was subsequently amended to add a defense that Bichel had as an asset an antitrust claim against Shuron Continental, Division of Textron, Inc. (Shuron) and Universal Optical, Inc. (Universal), both of whom were petitioning creditors. At that time no antitrust suit had been filed, although Bichel has recently commenced an action.

Bichel then moved for permission to file a counterclaim to recover treble damages for Shuron's alleged violation of the antitrust laws. This motion was denied on the basis of Associated Electronic Supply Co. of Omaha v. C.B.S. Electronic Sales Corp., 288 F.2d 683 (8th Cir. 1961), which states that a counterclaim may not be asserted as a basis for the recovery of a judgment for damages against a petitioning creditor.

Bichel has now presented the Court with a motion for production of documents relating to its antitrust claim against Shuron. Shuron challenges this motion on the ground that the Bankruptcy Court is an inappropriate forum in which to litigate antitrust issues.

Bichel's reason for pursuing this discovery of documents is to establish either that its antitrust claim is an asset or that the claim is a setoff against Shuron and Universal and will defeat their claims as petitioning creditors.

The status of Bichel's antitrust claim against Shuron and Universal is in an uncertain state. The Court has allowed Bichel to pursue discovery on this claim, feeling that sufficient evidence would be produced to allow an attorney, well versed in antitrust litigation, to render an opinion as to the validity and probability of success of Bichel's claim at trial. The Court has assumed that a jury could assess a monetary value for this claim as an asset of the alleged bankrupt.

At the hearing on Bichel's motion for production of documents counsel for the petitioning creditors challenged the Court's assumption and asserted that the antitrust claim may not be included as an asset in the bankrupt's estate or used as a setoff against the claim of Shuron as a petitioning creditor in order to defeat the jurisdiction of this Court. These issues are now squarely before the Court and should be decided in order to establish guidelines for the trial of this case. Two issues are presented:

1.  Is a possible antitrust claim an asset?

2.  Is an antitrust claim a defense cognizable in a bankruptcy proceeding to defeat a petitioning creditor?

Section 1(19) of the Bankruptcy Act, 11 U.S.C. § 1(19), provides that:

"A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property * * * shall not at a fair valuation be sufficient in amount to pay his debts."

The key to determining whether or not an antitrust claim can be included as property available for the payment of debts is the phrase "fair valuation." In this regard it is clear that an alleged bankrupt may not avoid adjudication simply by claiming that it has a cause of action against another for an amount sufficient to pay its debts or by starting an action for an amount sufficient to pay its debts. On the other hand, an alleged bankrupt with a cause of action which may be readily collectible should not be forced into involuntary bankruptcy simply because a judgment has not been obtained or collected.

The Courts in applying the phrase "fair valuation" have to some extent solved this and similar problems by interpreting the phrase to mean "a value that can be made promptly effective by the owner of property to pay his debts." Stern v. Paper, 183 F. 228, 230 (D.C.N.D.1910), aff'd, Paper v. Stern, 198 F. 642 (8th Cir. 1912).

■ Our Court of Appeals has recently stated that:

"Under the 'balance sheet test' of the Bankruptcy Act, 'insolvency' results when the aggregate of a debtor's property is not sufficient at a fair valuation to pay his debts, which means a fair market price that can be available for payment of debts within a reasonable period of time, and 'fair market value' implies a willing seller and a willing buyer." American National Bank & Trust Company of Chicago, Ill. v. Bone, 333 F.2d 984, 987 (8th Cir. 1964).[1]

The problem presented is to determine the value of Bichel's antitrust claim and the time within which that value can be made available to pay Bichel's debts.

As to the issue of value, it is apparent that usual tests such as a "willing seller and a willing buyer" are not applicable to an asset such as an antitrust claim. Counsel for Bichel propose to make discovery on their claim and to present all the evidence to an attorney experienced in antitrust litigation, who will testify as to the "value" of the claim. This is at best a shaky ground upon which to establish the value of the claim, *see*, In re Schindler, 223 F.Supp. 512, 528 (E.D.Mo.1963), but it appears to be the only method by which this purported asset may be valued. At this point it is difficult to determine exactly to what an expert could testify concerning the valuation of the asset. For the expert to testify that the value of the claim if prosecuted and a judgment rendered would be "X" dollars clearly would not satisfy the reasonable time requirement and neither would testimony as to the value of the claim at the time of trial, taking into consideration the fact that

an action had been commenced and then discounting the value to take into consideration the fact that antitrust litigation is usually protracted. The same would apply to a valuation of an unprosecuted but contemplated antitrust suit at the time the involuntary bankruptcy petition was filed. Although this may establish some type of "value" for the claim, it cannot establish that the "value" will be available to pay Bichel's "debts within a reasonable time." As stated in In re Cooper, 12 F.2d 485 (D. Mass.1926):

"The test seems to be whether the claim [a suit for breach of contract] is one which can be rendered available for the payment of debts within a reasonable time." 12 F.2d at 486.

■ Even though a suit has been filed and assuming the probability of recovery is high, it would be unlikely that the case could be tried prior to the September term of this Court, which would be one year after the filing of the petition, even disregarding the problem of pretrial discovery. In addition, it would seem that before settlement negotiations could begin the defendants would wait until all of plaintiff's and most of their discovery had been completed. To imagine any type of recovery within two years of the date of filing the petition would seem to be unrealistic. This is simply not a reasonable time.

Two cases have considered the question of whether a legal claim can be considered an asset of an alleged bankrupt. In Penn v. Grant, 244 F.2d 309 (9th Cir. 1957), the alleged bankrupt attempted to assert as an asset, in support of solvency, an action then pending against a finance company based on usury. The Court upheld the Referee's finding that

---

1. The test of insolvency in bankruptcy is a "balance sheet" test, *e. g.*, Langham, Langston and Burnett v. Blanchard, 246 F.2d 529, 532 (5 Cir. 1957); Syracuse Engineering Co. v. Haight, 110 F.2d 468, 471 (2 Cir. 1940); In re United Finance Corporation, 104 F.2d 593, 598 (7 Cir. 1939); Feldman v. Capitol Pierce Dye Works, Inc., 185 F.Supp. 426, 432 (S.D. N.Y.1960); Tumarkin v. Gallay, 127 F.Supp. 94, 95 (S.D.N.Y.1954); 1 Collier on Bankruptcy, Para. 1.19, p. 98 (14th Ed.); and the point of time the test must be applied is the date of the alleged act of bankruptcy. Cohen v. Sutherland, 257 F.2d 737, 741 (2 Cir. 1958); Starfred Properties, Inc. v. Ettinger, 131 F.2d 575, 576 (2 Cir. 1943); 1 Collier on Bankruptcy, Para. 3.201, p. 434 and Para. 3.208, p. 456 (14th Ed.).

the alleged claim "was inchoate and uncertain in character and amount and had no appreciable value." Counsel for Bichel correctly points out that the decision in *Penn* was made after evidence relating to the claim had been received. If evidence must be received before a determination can be made of the asset's value, then Bichel should be allowed to pursue discovery.

However, in In re Cooper, 12 F.2d 485 (D.Mass.1926), the Court determined that the master properly excluded evidence on the question of insolvency regarding an action for damages for breach of contract instituted by the alleged bankrupt after the bankruptcy proceeding was commenced. The Court held that the claim was of such a nature that it could not be considered as an asset within the meaning of section 1(a) (19). This Court agrees with the reasoning of the *Cooper* case and feels that Bichel's antitrust action is not entitled to be included as an asset available for the payment of Bichel's debts.[2]

For these reasons the Court will not allow discovery or receive evidence relating to the value of Bichel's antitrust claim as an asset since it is clear that whatever its value, that value will not be available for the payment of debts within a reasonable time.

The second issue relates to the use by Bichel of its antitrust claim as a setoff, counterclaim or defense to the petitioning creditor's claim. The Eighth Circuit has stated that setoffs or counterclaims may be asserted by the alleged bankrupt to show that the petitioner is not a creditor, or not such a creditor as is authorized to file a petition, or to show that the alleged bankrupt is in fact not insolvent and not subject to adjudication. Associated Electronic Supply Co. of Omaha v. C.B.S. Electronic Supply Corp., *supra*; Harris v. Capehart-Farnsworth Corp., 225 F.2d 268 (8th Cir. 1955).

The presence of three qualified petitioning creditors is jurisdictional. Harris v. Capehart-Farnsworth Corp., *supra*.

The Court has assumed, although the pleadings are not clear, that Bichel is claiming that since Shuron and Universal are liable to Bichel for money damages equal to or in excess of the amount Bichel owes them, they are not qualified creditors and, therefore, this Court lacks jurisdiction. At this point in the proceedings Bichel has chosen to pursue its claim and seek discovery only against Shuron. The intervention of a fourth petitioning creditor would seem to render a decision on this issue moot since even if Shuron were disqualified, three qualified creditors would still be present. However, since Bichel also has a claim against Universal, the Court will assume that rather than drop its claim and stop discovery in relation to Shuron it will begin to proceed against Universal, thus

**2.** Other cases illustrate that this claim is not a proper issue in this case. In Stern v. Paper the Court noted that "The retail price that could be realized in the slow process of trade" might not be used because of expense and mercantile risks involved, and the Court deemed the true criteria to be what "a capable and diligent business man could presently obtain for the property after conferring with those accustomed to buy such property." 183 F. at 231. In Babbit v. Read, 236 F. 42 (2 Cir. 1916), Judge Learned Hand, in commenting on the time period to be used in valuating royalties to be received on coal where it was undisputed there was sufficient coal available on which to pay royalties, noted: "The peg to hang them (value) on is the testimony that royalties are the 'basis' of calculating value. Doubtless they are but not upon the present full value of royalties payable a century hence. 'Value' is what the thing will bring to-day in exploitation or exchange under some presently possible condition." In Irving Trust Co. v. Manufacturers' Trust Co., 6 F.Supp. 185 (S.D.N.Y.1934), a rent deposit was determined not to be properly included as an asset on the question of solvency since it "was not a saleable asset." Assets such as organization expenses and leaseholds have also been excluded from the bankruptcy test of solvency. See Feldman v. Capitol Pierce Dye Works, Inc., 185 F.Supp. 426, 432 (S.D.N.Y.1960).

rendering a decision of the issue necessary.

In considering the issue the Court must assume either that an antitrust claim has been properly pleaded or that since it is raised as a defense it need not contain all the necessary jurisdictional language. The Court assumes that Bichel's antitrust claim has been validly pleaded and duly charges a violation of the antitrust laws. This assumption, however, does not solve the problem, but merely permits the Court to focus on the vital issue—the availability of the defense. This question has been presented to the United States Supreme Court which has held that such a claim is not available as a defense in an action based on contract.

In Bruce's Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L. Ed. 1219 (1947), the Supreme Court stated:

"The Act provides sanctions and it does not make uncollectibility of the purchase price one of them. Violation of the Act is made criminal and upon conviction a violator may be fined or imprisoned. 49 Stat. 1528, 15 U.S.C. § 13a, 15 U.S.C.A. § 13a. Any person who is injured in his business or property by reason of anything forbidden therein may sue and recover threefold the damage by him sustained and the costs of suit, including a reasonable attorney's fee. 38 Stat. 731, 15 U.S.C. § 15, 15 U.S.C.A. § 15. This triple damage provision to redress private injury and the criminal proceedings to vindicate the public interest are the only sanctions provided by Congress." 330 U.S. at 750, 67 S. Ct. at 1018.

The Court also held that by enforcing the contract the courts did not become parties to the enforcement of an illegal discriminatory contract. 330 U.S. at 755, 67 S.Ct. at 1015.

The Supreme Court reaffirmed this position in Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959), a case involving the Sherman Act, where it stated:

"Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' Continental Wall Paper Co. v. Louis Voight & Sons Co., [212 U.S. 227] at 271, 29 S. Ct. 280, 53 L.Ed. 486 (dissenting opinion)." 358 U.S. at 520–521, 79 S.Ct. at 432.

■ The decisions of the Supreme Court in *Bruce's Juices* and *Kelly* clearly establish that Bichel's only remedy for a purported violation of the antitrust laws is a private treble damage action. The Bankruptcy Court is not the proper forum to litigate such an action, as this Court has already held. In Matter of Bichel Optical Laboratories, Inc., 299 F.Supp. 550 (January 29, 1969).[3]

The Court denies Bichel's motion for production of documents (1) on the ground that Bichel's antitrust claim is not an asset which is available for the payment of its debts within a reasonable time, and (2) on the ground that Bichel's antitrust claim is not available to it as a defense or setoff to the claims of Shuron and Universal for goods sold and delivered.

---

3. *See* Georgia Jewelers, Inc. v. Bulova Watch Co., 302 F.2d 362 (5th Cir. 1962); Associated Electronic Supply Co. of Omaha v. C.B.S. Electronic Sales Corp., 288 F.2d 683 (8th Cir. 1961); Schreffler v. Schreffler, 155 F.2d 221 (10th Cir. 1946); In re Love B. Woods & Co., 222 F.Supp. 161 (S.D.N.Y.1963).