### ABDO et al. v. TOWNSHEND et al.

### In re TALIP et al.

(Circuit Court of Appeals, Fourth Circuit.   July 5, 1922.)

No. 1956.

1. **Bankruptcy ⬤⇒303(1)—Matters to be shown and burden of proof in suit to recover preference.**

To maintain a suit to recover a preference, under Bankruptcy Act, § 60 (Comp. St. § 9644), it is necessary to show, and the burden is on the plaintiff to prove, that the bankrupts, while insolvent, within four months of the filing of the petition, made a transfer of property, that the transferee thereby obtained a greater percentage of his debt than other creditors of the same class, and that he then had reasonable cause to believe that the enforcement of the transfer would effect a preference.

2. **Bankruptcy ⬤⇒302(1)—Petition in suit to recover preference held to state cause of action.**

Petition in suit to recover a preference *held* to state a cause of action, though not stating the kind of property transferred, the aggregate liabilities of the bankrupts, or the value of their assets, especially where the bankrupts never filed proper schedules, and their books were not so kept as to furnish this information.

3. **Bankruptcy ⬤⇒287(2)—Assumpsit lies when personal property is subject of preferential transfer.**

Where a preferential transfer consists of personal property, the trustee may maintain assumpsit, and is not limited to detinue for the recovery of the specific property transferred.

4. **Bankruptcy ⬤⇒303(2)—Evidence of indebtedness when petition filed admissible in suit to recover preference, and not prejudicial.**

In suit to recover preference, though proof of indebtedness when petition was filed did not in itself show insolvency when transfer was made, it was properly received and not prejudicial.

5. **Bankruptcy ⬤⇒467—Evidence held of so little bearing on issue of insolvency that objection might be disregarded.**

In action to recover preference, evidence of appraised value of bankrupts' interest in vacant lots *held* of so little bearing on the issue of insolvency that objection thereto, though well taken, might properly be disregarded.

6. **Witnesses ⬤⇒322—Plaintiff properly permitted to cross-examine and impeach hostile witness, whom he was obliged to call.**

In suit to recover preference, where defendants and bankrupts, who were fellow countrymen, were hostile, evasive, and insincere, plaintiff *held* properly permitted to cross-examine them and attempt to impeach their testimony; he being obliged to call them because they presumably had knowledge of the facts.

7. **Witnesses ⬤⇒244, 380(7)—Witness whom party is compelled to call may be asked leading questions, cross-examined, and impeached by showing inconsistent statements.**

Witnesses whom a party is compelled to call may be asked leading questions, subjected to cross-examination, confronted with inconsistent statements, or otherwise shown to be untruthful.

8. **Bankruptcy ⚙═➞303(2)—Testimony of accountant, bearing on financial condition when preferential transfer made, held competent.**

In suit to recover preference, testimony of accountant, which, though not complete or accurate, because of the imperfect condition in which the bankrupts' accounts were kept, bore more or less directly on their financial condition at the time of the transfer, was competent.

9. **Bankruptcy ⚙═➞303(2)—Question whether defendants, receiving preference, had customarily permitted return of goods, held properly excluded.**

In suit to recover preference from creditors to whom bankrupts turned over goods, question whether it had been customary for defendants to permit return of goods other than those involved in the suit was properly excluded, where the goods returned were not shown to be the goods originally shipped to the bankrupts, as answer would have had no material bearing on the matter in dispute, and would not have established a business custom.

10. **Bankruptcy ⚙═➞166(3)—Transferee held bound to inquire as to financial condition, and charged with knowledge of what inquiry would have disclosed.**

Transfer of goods by bankrupts to creditor, within four months before bankruptcy and while insolvent, *held* in effect a giving of security for the debt, making it the duty of the transferees to make inquiry as to whether a preference was intended, and charging them with knowledge of what inquiry would have disclosed concerning the bankrupts' financial condition, and an instruction to that effect not misleading or prejudicial.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action by E. V. Townshend, trustee in bankruptcy of John Talip and another, late partners as Talip & Homad, bankrupts, against Charles Abdo and another, partners doing business as the Guyan Dry Goods Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Plaintiff's instruction No. 2 told the jury that, if the bankrupts were during the four months preceding the filing of the petition insolvent, and while insolvent were indebted to defendant and other creditors of the same class, and while insolvent and within four months preceding the filing of the petition transferred to defendants, in payment of a debt due defendants, certain goods and merchandise, and defendants accepted such goods and merchandise in payment of their debt, then the taking of such goods and merchandise was in effect a taking of security for the debt, and it became defendants' duty to make inquiry of the bankrupts as to whether a preference was intended, and though they did not make such inquiry they were chargeable with knowledge of all facts relative to the financial condition of the bankrupts that such inquiry, if made, would have disclosed. Defendants assigned error thereon, because the return of the goods under the circumstances of the case was not equivalent to a taking of security for the debt, and because no such facts were shown as would put defendants on inquiry as to the solvency of the bankrupts.

E. L. Hogsett, of Omar, W. Va., for plaintiffs in error.
George S. Wallace, of Huntington, W. Va., for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

KNAPP, Circuit Judge. Abdo and Abass, plaintiffs in error, herein called defendants, are partners in a wholesale business carried on at Logan, W. Va., under the name of Guyan Dry Goods Company. Talip and Homad, also partners, had a retail store at Omar, in that state. In the spring of 1919, Homad, because of ill health, went to Clarksdale,

Miss., where he conducted a small business in peddlers' supplies. Talip was left in charge at Omar. Defendants sold goods to Talip and Homad, in 1919, both for the Omar store and for the business at Clarksdale. Some of the goods were later returned. November 20th Homad shipped back from Clarksdale goods invoiced at $769, and December 2d and 8th Talip shipped back from Omar goods invoiced at $1,759. December 24th the store and stock of goods at Omar were destroyed by fire. Not long afterwards Talip and Homad made a voluntary assignment for the benefit of their creditors to one Robert Bland, to whom they transferred such property as they had, including insurance policies aggregating $15,200, and the books and papers saved from the fire.

On February 26, 1920, an involuntary petition in bankruptcy was filed against them; later, May 12th, they were adjudicated bankrupts; in June the plaintiff, E. V. Townshend, was appointed trustee of their estate; and in July, by direction of the referee in bankruptcy, this suit was brought to recover the value of the goods which had been returned to defendants as an alleged preference under section 60, subsecs. "a" and "b," of the Bankruptcy Act (Comp. St. § 9644).

[1] To maintain such a suit it is necessary to show, and the burden of proof is on the plaintiff, that the bankrupt, (1) while insolvent, (2) within four months of the date of filing the petition in bankruptcy, (3) made a transfer of property; (4) that the transferee was thereby enabled to obtain a greater percentage of his debt than other creditors of the same class; and (5) that the person receiving the transfer then had reasonable cause to believe that the enforcement of such transfer would effect a preference.

It would expand this opinion to undue length, and serve no useful purpose to recite the proofs of plaintiff on these questions of fact, and we therefore content ourselves with saying, after careful study of the record, that enough was shown in our judgment to amply sustain the verdict in his favor. Indeed, it is rather difficult to see how the jury could have reached a different conclusion. We turn, then, to consider briefly the other assignments of error.

[2] 1. The action of plaintiff is assumpsit; the declaration containing the common counts, with a bill of particulars, and a special count. The latter includes the following:

"That heretofore, to wit, in the months of November and December, 1919, and within four months preceding the filing of the petition in bankruptcy against the said John Talip and Harry Homad, the said bankrupts, while insolvent, transferred personal property to the amount of $4,112.83 to the defendants, Charles Abdo and Mike Abass, partners trading and doing business as the Guyan Dry Goods Company, who were then and there creditors of the said John Talip and Harry Homad, and the effect of said transfer was to and did enable the said Charles Abdo and Mike Abass to obtain a greater percentage of their debts against the said John Talip and Harry Homad, bankrupts, than other creditors of the same class, and that the said Charles Abdo and Mike Abass then and there had reasonable cause to believe that the said transfer would effect such preference."

To this declaration there was a demurrer, on the ground, in substance, that it does not set forth such facts as justify the conclusion that the property transferred to defendants effected a preference:

"Because it is not alleged (a) what the personal property alleged to have been turned over was or its value; (b) what the amount of defendants' debts against John Talip and Harry Homad are; (c) that there are other creditors of the same or any other class and the amounts of their debts; (d) what the assets and liabilities of the said bankrupts are."

The demurrer further charges that:

"Plaintiff's action, if any he has, is detinue to recover the specific property, or in the alternative its value, and not assumpsit."

At the argument on this demurrer, as the record indicates, the court below allowed the declaration to be amended by adding thereto a paragraph as follows:

"That at the time of the filing of the petition in involuntary bankruptcy against the said Talip and Homad they were indebted to various creditors of the same class as the defendants in a large sum, to wit, the sum of $45,000, and the assets of the said Talip and Homad at the time of the filing of said petition were less than the sum of $1,000."

It is not easy for one unfamiliar with the refinements of common-law pleading to understand why this declaration, as amended, if not before, should not be held sufficient. It seems to include all the elements of a cause of action under section 60b of the act. True, it does not show what kind of property was returned to defendants, or the aggregate liabilities of the bankrupts, or the value of their assets; but those particulars relate, not to the fact that a preference was effected, but merely to its extent. Moreover, the bankrupts never filed the schedules required by the act, showing the amount and kind and value of their property, with a list of their creditors and the amounts due each of them, and their books were not so kept as to furnish the information. In short, the declaration apparently states all that was known, or that reasonable diligence could ascertain, at the time it was filed.

[3] The learned argument of counsel that the form of action should have been detinue, and not assumpsit, is quite unconvincing. It involves a construction of the act which we are constrained to reject, and which to our minds is not supported by the cases cited. Further discussion appears unnecessary. We are of opinion that the declaration is sufficient both in fact and law, and the court was therefore right in overruling the demurrer.

[4] 2. The referee was permitted to testify that claims had been proved to the amount of $3,673.33, and this is urged as error, because:

"It is not shown that a single dollar of these claims was owing from the bankrupts at the date of the alleged preference."

Of course, proof of indebtedness on February 26, 1920, when the petition in bankruptcy was filed, does not of itself show insolvency in the previous November; but nevertheless we think this proof was properly received, to be considered with other testimony in the case, and cannot see that it was in any wise prejudicial to defendants.

[5] 3. Error is charged because plaintiff was allowed to testify that the bankrupts' interest in some vacant lots at Gilbert, W. Va., had been valued by the appraisers at $400, which appears to be something more than the amount at which they had been assessed. The bearing of this item on the issue of insolvency at the time of the alleged preference is

practically negligible, and therefore objection to the testimony, even if well taken, properly may be disregarded, especially so as defendants made no attempt to show that the lots had been undervalued.

[6, 7] 4. Further assignments of error are stated in the brief of counsel as follows:

"It was error for the court to permit counsel for the plaintiff to introduce as witnesses for the plaintiff the defendants, Chas. Abdo and Mike Abass, and the bankrupts, John Talip and Harry Homad, cross-examine them from the start, and then attempt to impeach their testimony."

The short answer to this contention is that these witnesses were not only hostile, but evidently evasive and insincere, to put it mildly. They are all Syrians. Abdo and Abass certainly are men of intelligence; they have built up a prosperous business, and are leaders among their countrymen. Abass admitted that he had at least $31,000 of their money, which he was keeping for them as a sort of banker. Their relations with the bankrupts were more than friendly, and the latter showed obvious willingness to aid the defense. Much of the testimony they gave, particularly their professed ignorance of the state of their affairs, the jury might well disbelieve. Yet the plaintiff was obliged to put them on the stand. They presumably had knowledge of the facts on which the controversy turns. If their admissions did not make a case for the jury, it was still necessary to question them specifically, in order to lay the foundation for their impeachment. It is familiar doctrine that witnesses whom a party is thus compelled to call may be asked leading questions, subjected to cross-examination, confronted with inconsistent statements at another time and place, or otherwise shown to be untruthful. We think the course pursued in this case was fully warranted by the circumstances, and the contrary contention cannot be sustained.

[8] 5. Error is also charged in permitting the witness Slack to testify to the indebtedness of the bankrupts as of December 29, 1919, because his statement was made up from such books and papers as came to the hands of the trustee, and was not shown to be correct, and because the question at issue was the amount of indebtedness at the time of the alleged preference. Slack was an expert accountant. He testified in substance that he prepared such a statement as could be made up from the checks, invoices, and most imperfect books of the bankrupts, which were turned over to him by the trustee. It was not complete or accurate, but what it showed bore more or less directly on the financial condition of the bankrupts at the time they transferred the property in question to the defendants. We deem it enough to say that his testimony was competent; its probative force was for the jury to determine.

[9] 6. The court excluded the following question put to Abass:

"In your dealings with these merchants, has it been customary for you to permit the return of goods, other than these mentioned in the suit?"

An affirmative answer to this question would not have established a custom of business, nor would it have had any material bearing on the matter in dispute, since the goods returned were not shown to be goods

originally shipped to the bankrupts. In any event it seems manifest that reversible error cannot be predicated upon this ruling.

[10] 7. Exception is taken to an instruction to the jury, referred to as plaintiff's instruction No. 2, which is too long to quote, and of which we need only say that in our opinion it states with substantial correctness the applicable rule of law, and has the sanction of ample authority. Eau Claire Nat. Bank v. Jackman, 204 U. S. 522, 27 Sup. Ct. 391, 51 L. Ed. 596; Brewster v. Goff Lumber Co. (D. C.) 164 Fed. 124; In re McDonald & Sons (D. C.) 178 Fed. 487; In re States Printing Co., 238 Fed. 775, 151 C. C. A. 625; In re Sutherland Co. (D. C.) 245 Fed. 663. We find nothing in this instruction which fairly can be regarded as misleading or prejudicial.

The judgment will be affirmed.