**Winthrop J. ALLEGAERT, as Trustee in Bankruptcy of duPont Walston Incorporated, Plaintiff,**

v.

**CHEMICAL BANK, Defendant.**

**No. 74 Civ. 1516.**

United States District Court,
E. D. New York.

Aug. 25, 1976.

Hughes, Hubbard & Reed, New York City, for plaintiff.

Shea, Gould, Climenko & Kramer, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

### PRELIMINARY STATEMENT

Plaintiff moves pursuant to Rule 12(f) of the Federal Rules of Civil Procedure for an order striking from defendant's answer its Fifth Defense to All Counts of the plaintiff's complaint.

The motion is assertedly brought pursuant to the direction of The Hon. Max Schiffman, United States Magistrate, as a result of a pretrial conference which dealt informally with certain discovery requests made by the defendant of the plaintiff. In particular, plaintiff objected to certain interrogatories and demands for production of documents on the ground that they pertain only to the alleged Fifth Defense and that such defense was and is irrelevant to this action.

After a preliminary hearing on plaintiff's motion defendant cross-moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for an order granting it leave to file and serve an "Amended Answer with Third-Party and Cross-Claim" and pursuant to Rules 14(a), 18(a), 19(a), 20 and 21 of such Rules for permission to join duPont Glore Forgan Incorporated ("DGF") and H. Ross Perot ("Perot") as third-party defendants. By letter dated March 31, 1976, the request to join third-party defendants was withdrawn. Accordingly, the only issue before the Court is the viability of the defendant's Fifth Defense.

In this action plaintiff, as the trustee in Bankruptcy of Walston Incorporated ("Walston"), seeks to set aside as voidable preferential or fraudulent transfers within the meaning of Section 60(b) and Section 67 of the Bankruptcy Act, the New York State Debtor and Creditor Laws and the common law, payments in excess of $2.5 million dollars by Walston to the defendant on the eve of Walston's petition for an arrangement under Chapter XI of the Bankruptcy Act.

In addition to other defenses, the defendant alleges in its Fifth Defense that by

reason of a "Realignment" of Walston and DGF pursuant to certain written agreements (i) the two firms "constituted a *single business entity* whose assets were and are available to satisfy the creditors of * * * Walston * * *, (ii) the single entity was not and is not insolvent, and (iii) that therefore, *a fortiori*, there can have been no voidable preference or voidable transfer to" the defendant.

The defendant contends that, although plaintiff now moves to strike the "single entity" defense, plaintiff at this time is maintaining an action in the Southern District of New York against DGF, Perot, and others in which plaintiff "adopts defendant's single entity theory virtually in its entirety". Specifically, defendant claims that plaintiff alleges in such suit (i) that the realignment was a merger between DGF and Walston under Delaware law; (ii) that the realignment contemplated that all operations of the two firms would be combined and that a single broker's business would result; (iii) that the parts of the newly formed entity would be wholly dependent on each other and would operate as a single business; (iv) that all of DGF's expenses were assumed by Walston; (v) that DGF took control of all the functions of Walston; and (vi) that under the realignment Walston's business and property and basic nature and structure were substantially altered and changed.

## DISCUSSION

■ The Bankruptcy Act utilizes a "balance sheet" test to determine solvency or insolvency, i.e., a debtor's assets, fairly valued, are to be compared to his debts as of the relevant date. The Act excludes from the assets "any property which [the debtor] may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors," 11 U.S.C. § 1(19). Further, the courts have consistently held that under the Bankruptcy Act contingent or inchoate claims of the bankrupt are not included as part of the bankrupt's property, *Penn v. Grant*, 244 F.2d 309 (9th Cir.), *cert. denied*, 355 U.S. 837, 78 S.Ct. 58, 2 L.Ed.2d 47 (1957); *In re Bloch*, 109 F. 790 (2d Cir. 1901); *In re Bichel Optical Laboratories, Inc.*, 299 F.Supp. 545 (D.Minn.1969); *In re Cooper*, 12 F.2d 485 (D.Mass.1926); see 1 *Collier on Bankruptcy*, ¶ 1.19[2.1], p. 107 (14th Ed.). This is so unless the claims are such that they may be rendered available for the payment of the bankrupt's debts within a reasonable time of the relevant act of bankruptcy, *Mossler Acceptance Co. v. Martin*, 322 F.2d 183 (5th Cir.1963), *cert. denied*, 376 U.S. 921, 84 S.Ct. 679, 11 L.Ed.2d 616 (1964); *Syracuse Engineering Co. v. Haight*, 110 F.2d 468, 471 (2d Cir. 1940); *In re Bichel Optical Laboratories, supra*; 1 *Collier on Bankruptcy*, ¶ 1.19[3], pp. 122–25.

These principles apply to the instant case in two ways. First, the exclusionary language of 11 U.S.C. § 1(19) would mean, if the allegations made to us are correct, that the assets of Walston transferred to DGF cannot be considered in determining whether Walston was solvent on the date of Walston's subsequent transfer to the defendant.

■ Second, defendant's Fifth Defense maintains in effect that Walston possessed an equitable claim to DGF's assets on the date of the transfer to the defendant, and that this claim was an asset which, with Walston's other assets rendered Walston solvent on that date. But this claim was at best contingent or inchoate, and not such that it could be rendered available for the payment of Walston's debts within a reasonable time, if ever. As such, this claim cannot be included in Walston's assets when determining Walston's solvency at the date of the transfer.

There is no longer any question but that it is the trustee's duty to seek to void every voidable preference or transfer including in this case any such that may have been made to DGF from or by Walston. (4A *Collier on Bankruptcy*, § 70.95[2], pp. 1104–1106) (14th Ed.).

Whether the defendant might make joint or parallel efforts with the trustee to achieve the same result, we need not now decide. In any event, it would appear that any retrieval of assets or other property

from DGF would necessarily be "for the benefit of the [bankrupt] estate" and would be distributable to all of the creditors by the bankruptcy court and trustee.

We think it appropriate to add these comments.

First, the conclusion we have reached will have the extra advantage of allowing the parties and this Court to avoid in this action the wasteful duplication of the necessarily involved Southern District discovery proceedings on the Walston-DGF relationship and to avoid any possible inconsistencies in results in the two litigations.

Second, upholding this type of defense could vitiate the basis for the voiding and recovery of preferential transfers. For example, where a bankrupt makes two voidable transfers each of which is for an amount in excess of the amount by which the debtor's liabilities exceed his remaining assets, each recipient could interpose a defense similar to the Fifth Defense of this defendant and claim that since the trustee can recover the amount paid to the other, there is actually no insolvency.

Third, the so-called Fifth Defense is really not a defense at all but in essence a separate action similar to the action brought by the trustee against DGF, which is not a party to this action as now constituted.

Accordingly, plaintiff's motion must be and the same hereby is granted and the Fifth Defense is hereby stricken, without prejudice to its reassertion if at some future date a determination is made in a case also involving DGF that there was in fact a merger of DGF and Walston and that no insolvency existed at the date of the filing of the petition in bankruptcy. The case is remanded to the Magistrates for further pretrial discovery and proceedings not inconsistent with this memorandum.

SO ORDERED.