In the Matter of Orville E.
HANSEN, Debtor.

The FIRST NATIONAL BANK OF
TEKAMAH, NEBRASKA,
Plaintiff,

v.

Orville E. HANSEN and Virginia
Hansen, Defendants.

Nos. CV 82-0-412, CV 82-0-464 and
CV 82-0-515.

United States District Court,
D. Nebraska.

Dec. 21, 1982.

360

Kutak, Rock & Huie, Maureen E. McGrath and Gregory Searson, Omaha, Neb., for plaintiff.

Schmid, Ford, Mooney & Frederick, Michael G. Helms and Marion F. Pruss, Omaha, Neb., for defendants.

## MEMORANDUM OPINION

BEAM, District Judge.

These related cases are before the Court on appeal from the Bankruptcy Court's Judgment of July 22, 1982, and subsequent Order of September 3, 1982. As further set forth below, the Court affirms the Judgment of the Bankruptcy Court as to all issues raised on appeal with one exception, and as to that issue the Court remands this action for further proceedings in accordance with this Memorandum Opinion.

The First National Bank of Tekamah, Nebraska, is the primary creditor of Orville E. Hansen, the debtor in a Chapter 11 reorganization proceeding filed in the United States Bankruptcy Court for the District of Nebraska. Virginia Hansen, the debt-

or's wife, is not a party to the bankruptcy action. The Bank sought a determination that Mr. Hansen is the sole owner of certain farm property which consists of most of the assets accumulated by the Hansens during their 32 years of marriage, and that all of the property is subject to the Bank's security interest. After a trial on the merits, the Bankruptcy Court found as follows. Virginia Hansen owns one-half of the property in question free and clear of the Bank's lien. The Bank failed to prove its allegations of partnership, misrepresentation, estoppel, unjust enrichment, conversion, right to contribution and agency. Orville Hansen's debt is dischargeable, and the Bank does not have a perfected security interest in the Hansens' growing crops or the proceeds thereof.

█ Matters on appeal to this Court after trial on the merits in the Bankruptcy Court are subject to the clearly erroneous standard of review. Therefore, unless this Court is left with the definite and firm conviction that a mistake has been committed, the findings of fact by the Bankruptcy Court are to be affirmed. *Acacia Mutual Life Ins. Co. v. Perimeter Park Investment Assoc., Ltd.*, 616 F.2d 150, 151 (5th Cir.1980) (*Bankruptcy Rule* 810); *Lang v. Cone*, 542 F.2d 751, 754 (8th Cir.1976) (appeal from *Fed.R.Civ.P.* 41(b) dismissal).

The Bank first urges that either Orville Hansen owns all of the property on the Hansen farm and his wife owns none, or, in the alternative, that the Hansens were engaged in a secret business partnership. The primary basis for this view is Orville Hansen's practice of using his name alone in dealings with creditors, suppliers and others, without reference to his wife's interest in the farm property.

On the other hand, both of the Hansens testified before the Bankruptcy Court that any property they acquired was regarded by them as jointly owned and that neither had ever considered Orville Hansen the exclusive owner of the farm assets. In addition, their expression of intent to hold all property concurrently has been consistent with their treatment of titled assets. Their only bank account is a joint checking account at appellee Bank into which their farm income was deposited, and Virginia, who undertook the farm bookkeeping duties, wrote many of the checks on this account. The Hansens are parties to a land contract to purchase their farm in joint tenancy, the deed to which is held in escrow at appellee Bank. The contract, deed and escrow instructions bear the names of both Orville and Virginia Hansen. Their vehicles also are titled in joint tenancy. Insurance policies on the property in question name both Orville and Virginia. The sign in front of their farm reads "The Hansens, Orville and Virginia." They both exercised open and continuous possession and control of the farm and everything on it.

The record reveals no evidence that either of the Hansens brought any goods or capital into their marriage, and for 32 years they worked together in their various farming endeavors. Although Virginia apparently assumed most of the housekeeping and child care responsibilities, she also performed duties more specifically related to farming. The record clearly indicates that all of the property accumulated by the Hansens over a 32 year period derives from their joint efforts in their farming operations. *See Craig v. United States*, 451 F.Supp. 378 (D.S.D.1978).

█ Appellee relies on several Nebraska cases which hold that in the absence of an express contract a husband is not required to compensate his wife for work performed beyond her "ordinary household duties" in connection with property or business interests to which he alone holds title. *See, e.g., Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952). In the present action, however, both spouses hold legal title to all titled property; both agree that all of their assets are jointly owned, and compensation for services is not the issue. Cotenancy is the issue. Applying the principle that the form of ownership in which property is taken depends to a substantial extent on the intent of the parties, *see generally In re Whiteside's Estate*, 159 Neb.

362, 368, 67 N.W.2d 141, 145 (1954), the Bankruptcy Court found that Orville and Virginia Hansen own the farm property in cotenancy, each owning a one-half undivided interest. This finding is not clearly erroneous and is sufficiently supported by the record.

■ With respect to the contention that the Hansens were parties to a secret business partnership, the Bankruptcy Court found that the record contains no evidence of any such partnership agreement. Furthermore, as a general rule "joint tenants and tenants in common are not partners and thus have no implied authority to bind each other. Thus a third party who takes a mortgage from one of the cotenants or makes improvements at the request of one of the cotenants may find himself out of luck in attempting to proceed against another cotenant's interest." Volkmer, Nebraska Law of Concurrent Ownership, 13 *Creighton L.Rev.*, 513, 529 (1979).

In *Ogallala Fertilizer Co. v. Salsbery,* 186 Neb. 537, 184 N.W.2d 729 (1971), the Nebraska Supreme Court declined to impute a business partnership relation to a married couple who shared a joint checking account into which their farm income was deposited, so that in a sense they shared profits and losses from the farm enterprise, not unlike business partners. "Yet this, being quite a usual marital arrangement, standing alone, is insufficient to establish a partnership...." *Id.* at 538, 184 N.W.2d at 730. Moreover, the creditor who had dealt exclusively with the husband could not recover his claim from the wife in the absence of proof that the husband had contracted with the creditor in the capacity of a managing partner in whose name all partners transacted business with third parties. The Bankruptcy Court in the present action was not clearly erroneous in concluding on the basis of the evidence before him that, as in the *Ogallala Fertilizer* case, Mr. Hansen contracted with appellee in his individual capacity rather than as the managing partner of a business partnership.

■ With respect to the claims of estoppel and fraud, the Bankruptcy Court found that Virginia Hansen at no time made any misrepresentations to the Bank, nor did she act improperly in any manner. The record suggests that the Bank's surprise at the discovery of Virginia Hansen's interest in the farm property derives primarily from its remarkably casual banking practices, including an avowed policy of ignoring the existence of farm wives in extending agricultural loans to their husbands. The loan officer who has managed Orville Hansen's account since 1976 testified that for at least 10 years the Bank has operated on the assumption that farm wives do not own farm property. The Bank's reasoning in Orville Hansen's case was circular, i.e., because Orville was the person with whom the Bank dealt, it seems never to have occurred to the loan officers involved that Virginia Hansen might have her own interest in the property. As a result, no Bank official ever inquired of either Orville or Virginia whether either or both of them considered Virginia a co-owner of the farm property.

Notwithstanding the Bank's knowledge of the Hansens' joint checking account and the status of their real estate purchase in joint tenancy, the Bank has taken the position that it was entitled to assume that all remaining property belonged exclusively to Orville Hansen. The Bank made no inquiries and did not even conduct lien or title searches with respect to the farm vehicles, which would have revealed joint ownership of those assets by the Hansens. Bank officials never requested Virginia to sign loan documents, financing statements, guarantees or promissory notes. They never requested her presence at loan negotiations, and she never participated in any dealings with the Bank. *See contra, Clements v. Doak,* 140 Neb. 265, 266, 299 N.W. 505, 507 (1941).

The annual property statements on which the Bank now claims reliance were prepared in a most informal manner. At the periodic request of his loan officer, Orville Hansen would bring in a list of all of the property on the farm and his esti-

mate of its current value. Mr. Hansen would then sign a property statement in blank, and later the loan officer would complete it after minimal discussion, if any, concerning the cattle count or whether property previously listed had appreciated or declined in value. Periodically the loan officer would drive by the Hansen farm or visit to inspect the livestock. Despite the Bank's awareness of the Hansens' joint tenancy in their checking account and realty, the entire value of both cash on hand (checking account) and the realty appeared on the property statements in the loan officer's handwriting. In addition, no real estate appraisals were ever conducted by the Bank.

In the absence of any statements by Virginia Hansen it is difficult to see how she could have misrepresented her ownership interests or how the Bank could have relied on her representations so as to give rise to a basis for estoppel. If a cotenant "does nothing to mislead a third person, or where the conduct of the tenant is not such as to warrant a third person's reliance thereon, the tenant is not estopped to assert that he is not bound by the unauthorized acts of his cotenant." *First Nat. Bank in Ord v. Morgan,* 172 Neb. 849, 854, 112 N.W.2d 26, 30 (1961).

■ As to whether an equitable lien should attach to Mrs. Hansen's share of the farm property on the theory of unjust enrichment, Comment 5 to *Neb.Rev.Stat.* U.C.C. § 9–203 (Reissue 1980) (attachment and formal requirements for enforceability of security interests) states:

> The theory of equitable mortgage, insofar as it has operated to allow creditors to enforce informal security agreements against debtors, may well have developed as a necessary escape from the elaborate requirements of execution, acknowledgement and the like which the nineteenth century chattel mortgage acts vainly relied on as a deterrent to fraud. Since this Article reduces formal requisites to a minimum, the doctrine is no longer necessary or useful. More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing.

The record does not establish that Orville Hansen conveyed any of the Bank's collateral to his wife. The Hansens purchased their property jointly using joint funds, some of which derived from the loans Orville obtained from appellee and others of which were traceable to Virginia's hard work on the farm, as well as Orville's. To use the theory of unjust enrichment to impress an equitable lien on her share of their joint property would circumvent the simple requirement that a secured lender obtain a signed writing pursuant to section 9–203, *supra.* As stated herein, no fraud, misrepresentation or other improper behavior was established at trial.

■ Having failed to protect its own interests, such as by requiring that Virginia Hansen sign a security agreement and note, the Bank now claims that Mrs. Hansen converted the proceeds of the loans extended to her husband. The loan funds were deposited in the Hansens' joint bank account, as were the profits from the farming operation. The contents of this account were not subject to the Bank's lien, and Virginia was entitled to draw on the account for any purpose including purchases. As the funds were used to make joint purchases, the Bank's security interest attached to Orville Hansen's share of property acquired thereby to the extent that such goods qualified as after-acquired property under the description of collateral in his security agreement with the Bank. *See Neb.Rev.Stat.* § 9–203, *supra.* There is no showing in the record that the funds were used for purposes other than the payments and purchases for which the loans were extended. The Bankruptcy Court was not clearly erroneous in rejecting the Bank's claim of conversion.

Orville Hansen never purported to grant a mortgage in the farm real estate to the Bank. Moreover, the Bank knew that the land was in the process of purchase by the Hansens as joint tenants. Therefore, it is

less than clear to this Court why the entire value of the real estate owned by the Hansens, or in fact any of it, should be considered subject to the Bank's security interest. Furthermore, this issue does not appear to have been raised before the Bankruptcy Court. For these reasons, this claim must fail on appeal.

■ A related claim concerns whether Orville Hansen has a right of contribution against his wife for funds he may have used to pay her portion of the land contract payments. The record does not establish whether or to what extent the source of such payments consisted of Orville Hansen's separate loan funds as opposed to the Hansens' joint profits from their farming operations. As the record reveals inadequate proof that Orville Hansen in fact paid "more than his share" of their joint obligation, the Bankruptcy Court did not err in refusing to find that such a right of contribution exists in this case. Furthermore, under Nebraska law, even if one spouse contributes more than his share of the purchase price of property acquired in the name of the other or jointly, a presumption arises that a gift was intended as to the amount contributed in excess of the payor spouse's half. *Hoover v. Haller,* 146 Neb. 697, 705, 21 N.W.2d 450, 455 (1946).

The issue which troubles this Court and which requires a remand for further findings and perhaps further evidence involves the Bank's assertion that Virginia Hansen authorized her husband to pledge her property.

■ It is clear that no agency relation is presumed to exist by virtue of cotenancy and that "one cotenant cannot ordinarily bind his fellows by contracts with third persons, unless he is ... duly authorized or unless they thereafter ratify his act." 20 AM.JUR.2d *Cotenancy and Joint Ownership* §§ 2, 91, 102 (1965). *Accord, Ahrens v. Dye,* 206 Neb. 423, 425, 293 N.W.2d 388, 390 (1980). Furthermore, in the absence of such authorization or ratification, a co-owner of property can convey or mortgage only such interest as he has, and the sale or lien will not affect the interests of the other co-owners. *Jolliffe v. Maxwell,* 3 Neb. (Unoff.) 244, 91 N.W. 563, 565–66 (1902).

■ The record establishes Virginia Hansen's knowledge that her husband had pledged farm property to the Bank as security for his loans, and that on certain occasions, at least, he was pledging all of their cattle. Even counsel for Orville Hansen conceded in his opening statement to the Bankruptcy Court that Virginia knew or assumed Orville had granted the Bank a security interest in all of the cattle and feed on the farm. In advance of certain loan applications, the Hansens apparently discussed Orville's intention to visit the Bank to borrow funds and to pledge certain property. As to other occasions, the record is not clear whether Virginia knew the extent of her husband's borrowings and the character or amount of property pledged. Whether their discussions and Virginia's knowledge of and cooperation in Orville's efforts to borrow funds from the Bank amount to prior authorization for her husband to pledge her property and/or ratification of such pledge cannot be reviewed on this record.

The Bankruptcy Court made no findings as to whether Virginia Hansen authorized the pledge of her property by her husband or whether she subsequently ratified such pledge, and, if so, the extent to which her property is therefore encumbered. As to these issues, the Bankruptcy Court concluded only that Virginia Hansen had not signed a note or security agreement and that Orville Hansen had not formed an intent to convey an interest in his wife's property. Specifically, the Court stated:

> I conclude as law that Mrs. Hansen's interest is free and clear of First National Bank's security interest in that she did not sign any note to the bank to evidence the indebtedness, that the loans were made to Mr. Hansen and that there is no security agreement in existence which bears Mrs. Hansen's signature. I make that finding in view—notwithstanding the suggestion that there was some im-

plied authority. I do not believe that Mr. Hansen acted with the intent to convey the interest or give a security agreement involving Mrs. Hansen's interest simply because he did not think in terms of those legal concepts. The bank, as I have said, failed to inquire.

The latter of these findings, i.e., that Orville Hansen did not intend to convey a security interest in the half of the farm property owned by Virginia, is contradicted by the evidence. Mr. Hansen did not even testify to this effect. On the contrary, the record contains multiple admissions that he intended to pledge all of certain kinds of property on the farm, e.g. cattle, in which he was a co-owner, and his actions were consistent with such intent. While Mr. Hansen may not have maintained an intent to deceive the Bank, and the evidence suggests that he did not, nevertheless he purported to convey a security interest in any and all farm property in which the Bank required an interest as a prerequisite to granting him the loans. As the Bankruptcy Court concluded, Mr. Hansen probably did not think in terms of the legal consequences flowing from his co-ownership of the farm property with his wife. One such consequence is that he could effectively pledge only his own undivided interest in the common property in the absence of Virginia's authorization or ratification of such pledge as to her share of the property. *See* 20 AM.JUR.2d, *Cotenancy and Joint Ownership* § 102 (1965). However, as the record strongly suggests that Orville Hansen intended to pledge all property available to him to secure his loans from the Bank, it is necessary to determine de novo whether Mrs. Hansen made her share of the property available to him for this purpose. Such a determination is properly remanded to the Bankruptcy Judge, who has had the opportunity to see and judge the credibility of the witnesses involved and who can take such further evidence, if any, as may be necessary to make this determination. This action will therefore be remanded to the Bankruptcy Court for specific findings on the issue of Virginia Hansen's actual, not implied, authorization

and/or ratification of her husband's pledge of her share in their common property. If the Bankruptcy Court concludes that Mrs. Hansen did authorize her husband to pledge property of which she is co-owner, the nature and extent of the property so encumbered must be determined, e.g., cattle only, cattle and feed, or all concurrently-owned farm assets.

On the issue of dischargeability, the Bankruptcy Court's finding that appellee failed to establish the essential element of intent to deceive is not clearly erroneous and is therefore affirmed.

■ In 1965, Orville Hansen executed a security agreement which granted the Bank a security interest in crops on a farm then leased by the Hansens. The legal description of that farm was included in the agreement. Under the Nebraska Uniform Commercial Code as it then existed and until July, 1980, no security interest could attach under an after-acquired property clause "to crops which become such more than one year after the security agreement [was] executed." Thus, the 1965 agreement expired as to Orville Hansen's share of growing crops "which became such" after 1966. Subsequently, the 1980 amendments to the Nebraska Uniform Commercial Code deleted the limitation as to after-acquired crops. Appellee contends that its security interest in crops then revived to cover the Hansens' 1981 corn crop. However, in the meantime, the Hansens had ceased farming on the realty described in the 1965 security agreement and had for years engaged in farming in their present location. In 1967, Orville Hansen had executed another security agreement granting a security interest in crops and after-acquired property "on the Orville Hansen farm," but without a legal description. *See Neb.Rev.Stat.* U.C.C. § 9–203(1)(a) (Reissue 1980). As a result, in 1981 there was no security agreement on file with a legal description of the real property location of the Hansens' 1981 corn crop. On the basis of these facts, the Bankruptcy Court held that the Bank was unsecured as to Orville

Hansen's share of the 1981 corn crop and its proceeds. This finding is affirmed.

An order has been entered contemporaneously herewith in accordance with this Memorandum Opinion.